CICERO HEARD *v.* B. V. McGUFFIE.

Estoppel — Recorded Deed of Trust — Silence of Grantee.

> The holder of a recorded deed of trust on personal property is not estopped to claim the property included in his deed of trust by his mere silence when told by the grantor that the title to the property had been transfered to another.[1]

Replevin by appellee against appellant to recover possession of a mule. From verdict and judgment for plaintiff, defendant appeals.

---

1

The mere fact that the remainder-man stood by and permitted improvements to be made on the land by the life-tenant, and did not give notice of his claim, will not estop the remainder-man from claiming the improvements after the life estate is terminated. Knowledge that the improvements are being made imposes no obligation on him to object. Stewart *v.* Matheny, 66 Miss. 21; 5 So. 387.

A part owner of land, residing thereon at the time of a sale thereof under a trust deed given by his co-tenant, purporting to convey the entire interest,

In the spring of 1881, L. D. Yates sold to Martin, a tenant on his place, a mule, and reserved a lien on it for purchase money. In order to secure supplies for that year, Martin, with the consent of Yates, gave a deed of trust on the mule to Cicero Heard. The deed of trust was properly acknowledged and recorded. Yates afterwards, through some sort of trade with Martin, got the mule back, and conveyed it to appellee, B. V. McGuffie. Heard's trustee took possession of the mule, and McGuffie sued out a writ of replevin to recover possession of it.

The opinion of the court contains a full statement of the facts.

APPEALED from Circuit Court, Hinds county, second district, T. J. WHARTON, Judge.

Reversed and new trial awarded, April 16, 1883.

*Attorneys for appellant, Shelton & Crutcher, and J. K. McNeely.*

*Attorney for appellee, M. Dabney.*

Brief of Shelton & Crutcher:

The facts disclosed by the record in the case are these: Martin was a tenant of Yates. Yates was a land holder and Heard a

though making no objection, is not by his mere silence estopped from asserting his title against the purchase, if such title be a matter of record, and he does nothing to mislead the purchaser into buying. Sulphine *v.* Dunbar, 55 Miss. 255.

A landlord who had taken a rent note from his tenant, and indorsed it in blank, surrendered it to the tenant, and with it gave the tenant a letter addressed to the creditors of the tenant, stating that he had surrendered to the tenant the note, which the latter "could use as he saw fit." On the faith of the letter, the creditors paid value for the note. *Held,* that these facts estopped the landlord and the tenant and their privies from afterwards denying that the note was a valid existing debt and a lien on the products of the rented farm. Newman *v.* Bank, 66 Miss. 323; 5 So. 753.

A landlord in Kentucky was led to believe by the tenant on her plantation in Mississippi that he was unable to pay rent due without selling his mules. She wrote him consenting to await another crop for the rent. In truth he had raised crops sufficient to pay the rent, a portion of which, in value exceeding the rent, he had delivered to merchants on a supply account, they knowing of the landlord's lien. Without her knowledge, he showed them her

merchant. Martin, as tenant, owed Yates rent. Yates had at some time—whether during the period of Martin's tenancy or not the record does not disclose—sold Martin a mule, and taken from him a note for the purchase money, in which a lien was retained on the mule, and which note all parties seem to regard as an incumbrance on the mule. Martin had to get his supplies from Heard, who would not furnish them without security; and, in order to enable Martin to give the security, Yates agreed with Heard to waive his supposed lien on the mule, which he did, and Martin executed a deed of trust on the mule and one bale of cotton in favor of Heard, under which Heard furnished the supplies. After this deed of trust was made, Yates executed a deed of trust on the same mule in favor of Odeneal, and transferred to Odeneal Martin's lien note for the purchase money of the mule.

About the beginning of the summer, when Martin's crop was in a fine condition, Heard proposed to Yates that he should release all other claims except the claim for rent on Martin's crop, and Heard would release his deed of trust on the mule and let

letter, and on the faith of it they gave him further credit. The rent was not paid, and the landlord sued the merchants for the value of the crops received. *Held,* that she was not estopped by her letter, she having done nothing to mislead defendants, and not knowing her rights when she wrote. Houston *v.* Witherspoon, 68 Miss. 190; 8 So. 515.

The holder of a recorded mortgage may stand by and see the mortgaged land sold, even to one who has no actual notice of his claim. The record is notice of his lien, and his mere silence will not estop him from asserting it, if he has done nothing to mislead the purchaser. Sulphine *v.* Dunbar, 55 Miss. 255; Staton *v.* Bryant, 55 Miss. 261; Murphy *v.* Jackson, 69 Miss. 403; 13 So. 728.

The holder of a recorded title to land by conduct inconsistent with such title is estopped from asserting it against one who has been misled by his conduct. Wynne *v.* Mason, 72 Miss. 424; 18 So. 422.

Those having an interest in land held not estopped to set up their claim as against a grantee claiming under others. Ligon *v.* Bartin, 40 So. 555.

Ignorance of his rights held to preclude a claim of estoppel by silence against one having an interest in land mortgaged by another as his in fee. Mortgage Co. *v.* Bunckley, 41 So. 502.

One having an interest in land was not estopped by his silence at a time when he knew that another was mortgaging the land as his in fee, where his interest appeared of record. Mortgage Co. *v.* Bunckley, 41 So. 502.

In order for one to be estopped by his conduct, the other party must have relied thereon. Mortgage Co. *v.* Bunckley, 41 So. 502.

Yates take the mule, Martin consenting. Yates refused to accede to this proposition. Heard repeated the proposition several times, but Yates always refused to accept it. What claims Yates had on the crop, besides rent, does not appear. Heard had furnished Martin, and there is no evidence that Yates ever furnished him anything. We are, therefore, left to conjecture that the parties regarded the price of the mule as a lien on the crop.

Later in the year, possibly about the beginning of the fall, when Martin's crop was in a bad condition, and it seemed that he would make very little, Yates changed his mind, and, without seeing Heard, took Martin's mule and transferred it to McGuffie upon the promise of the cotton to pay the former's debt to Odeneal. It seems that Yates told Heard's clerk that he had done this, but there is no evidence that the clerk told Heard. Martin says that after the mule was taken he told Heard, who said nothing. The result is that Heard gets nothing for his supplies, the crop proving insufficient to more than pay the rent.

Upon these facts the court instructs the jury for the plaintiff, in substance, that if they believe that Heard permitted Yates to take the mule back in order that Heard's deed of trust should be prior to all other claims on the crop, except rent, then Heard is estopped to claim the mule. We think the vice of such instructions is apparent. It assumes as true two propositions, both of which were in issue in the case: First, that Yates *had* other claims on the crop except rent; and, second, that Yates had, in fact, released all such claims on the crop. The proposition of Heard was that Yates should release these claims. It was, therefore, proper to leave to the jury to say, first, whether Yates had any such claims, and, second, whether he had released them. But the instruction excludes both of these questions from the consideration of the jury. We therefore insist that the instruction was erroneous in assuming the truth of these facts. Barker *v.* Justice, 41 Miss. 240.

Again, this instruction clearly misled the jury. Both of these propositions assumed were, in fact, untrue. No claim whatever, except rent, is shown to rest on the crop in favor of Yates. It is not shown that he furnished Martin anything. The sale of the mule was a mere business transaction between man and man. It was not a furnishing by a landlord to a tenant. But, even if it had been, the price of the mule would have been no lien on the

crop. The Acts of 1867 and of 1876 made most stock a lien, but the Code of 1880, § 1801, does not. Therefore, there was no claim on the crop on account of the mule. Again, Yates had never released that claim (even if it were a claim), because it was not in his possession or control. He had transferred it to Odeneal, and, if it were a lien, Odeneal held the lien, and not Yates, and hence Yates could not release it. Therefore the assumption that the claim was released was false.

Again, we insist that the instruction misstated the doctrine of estoppel. Had Heard, for a *valuable consideration*, have released his deed of trust, he would have been bound, not upon the principle of estoppel, but on that of contract. But there was no valuable consideration. The release of the price of the mule on the crop, even if it had been done, would have been no consideration for Heard's contract, if it be true that that claim was no lien on the crop. Newell *v.* Fisher, 11 S. & M. 481.

Now, we insist that an essential element of estoppel is that the act or declaration invoked as an estoppel must have been acted on by the other party in such a manner that he would be injured by a denial of the same; or a change of position on the part of the party making the declaration or doing the act. Turnipseed *v.* Hudson, 50 Miss. 429; Stratton *v.* Bryant, 55 Miss. 261.

In this case no action on the part of Yates is shown, done by him in reliance on the acts of Heard, which it would injure Yates to recall. He gave up nothing. He got the whole crop. He did not sell the mule, but only transferred it to McGuffie upon his promise to pay his debt to Odeneal, and it is not shown that McGuffie had paid said debt.

Again, we insist that the verdict was contrary to the evidence. The proof showed that when Heard made the proposal Yates rejected it. That clearly put an end to the proposal. He could not subsequently accept it so as to bind Heard without Heard's consent. It is not pretended that Heard was seen by him and his consent obtained. All that is claimed was that he rode the mule to the town where Heard lived, and that Martin told Heard, and he made no objection. From this the jury was asked to infer acquiescence on Heard's part. We insist that no such consequence follows from these facts. Heard may have seen him on the mule, and, knowing that Martin lived on his place, would naturally suppose that he was using the mule as Martin's prop-

erty. Martin's statement to Heard could not bind him, though he may have made no objection. Martin was not the man to whom the objection was to be made. Heard, by ordering his trustee to take possession of the mule, indicated his objection.

Again, it must be remembered that the circumstances had entirely changed from what they were when Heard made the proposition. Then the crop was in a flourishing condition, but when Yates took the mule it was in a bad condition. The reason inducing Heard to wish such an exchange no longer existed. While the reason existed Yates had declined the proposal. He cannot now, when things have changed, take the mule without mentioning to Heard that he would do so, and obtaining his consent, and then insist that because Martin had told Heard of it, and he has ridden the mule to the town where Heard lived, and Heard makes no formal objection, that he is estopped to claim the mule.

We insist, therefore, that the instruction was erroneous in law, that it misled the jury, and that the verdict is clearly in conflict with the evidence, and, therefore, the case should be reversed.

Although the giving of this instruction is not made the ground for a new trial, it was excepted to when given, and will, therefore, be noticed here. Temple *v.* Hammock, 52 Miss. 360; Smith *v.* Sparkman, 55 Miss. 653.

Brief of J. K. McNeely:

\* \* \* The testimony of Yates corresponds with Heard's statement as to the first proposal and rejection entirely, and, we think, supports him as to the latter. Yates says he does not know whether Heard was ever informed as to his acceptance or not. That he frequently rode the mule to town; this he may have done, and perhaps did do, and it was his duty to have seen Heard and notified him, in person or in writing, of the fact that he had concluded to take the mule. The failure of Yates is evidence of the presumption that Heard would immediately have taken the mule under his trust deed had he known Yates' intention, because at this time it was evident that the crop would be insufficient to pay Martin's indebtedness, and that Yates knew what would be the consequence of his informing Heard. Besides this, there had been a criminal prosecution threatened against Yates for giving a deed of trust on property that did not belong to him, and he wanted this mule, the one he had falsely represented as his own

in the deed of trust, to satisfy his indebtedness to Odeneal, and he placed the mule in the hands of McGuffie, upon McGuffie promising to satisfy the said debt. By the success of this venture, he expected to save himself from the threatened criminal prosecution.

McGuffie also had an inducement to enter into this arrangement, which has the appearance of a conspiracy, because it appears that Vick McGuffie, who was jointly interested in Martin's crop, and who had joined Yates in the deed of trust, and was also threatened, was the son of appellee. If they could get the mule by any means, they could stop the prosecution and evade the consequences of one fraudulent and unlawful act, i. e., the giving the deed of trust to Odeneal, Yates taking the chances of fighting another transaction equally as questionable.

It is not shown that Heard received any consideration for releasing his trust deed—in fact it is proven by plaintiff's witnesses that he received nothing. At the time Yates says he took the mule, the crop had materially failed and the outcome proves that Yates got all the crop and that Heard got nothing. Yates got the value of the mule in Martin's note, which he had transferred, and then, for no consideration whatever, got the mule. We submit that this has the character of great unfairness, to say the least. Yates not only gets the rent which was made by Heard's money in the supplies furnished Martin, but he gets the value of the mule and the mule itself.

The verdict was clearly against the law of the case. Before Martin could revest Yates with the title to the property he must pay off the indebtedness secured by the trust deed. Martin could only have granted his right to redeem and then it would become necessary for his vendee, or as it appears in this case, his donee, to have paid Martin's debts before Heard's trustee could be divested of the legal title. This, as the record shows, has not been done, unless we are to believe that Heard voluntarily surrendered his security, which is absurd, or that he intended to make Yates a present of the mule to help him out of the trap he had set for himself and was about to fall into.

We submit that the true intent of the proposal made by Heard to Yates was to release the mule and substitute the entire crop of Martin, including the rent. It certainly was not based upon the idea that if Yates would release his claim to the crop, except

for rent, that Heard's trust deed would become operative upon the entire crop, because the trust was given upon *one bale of cotton only,* and Yates' release, if it be granted that he had a lien for the purchase money of the mule, could not enlarge the terms and effect of the trust deed, unless Yates had also assigned to Heard that lien and Martin's promissory note, which was impossible, since he had already transferred the note to Odeneal.

Brief of M. Dabney:

I do not think that briefs of appellant's counsel properly state the facts. They are, briefly: In the spring of 1881, L. D. Yates was engaged in planting, and had a tenant named Martin. Yates sold Martin a mule on credit, to be paid for that fall. Martin was to pay Yates' rent in cotton.

Cicero Heard, a merchant in Utica, was requested to advance supplies to Martin, Yates consenting that Martin should include the mule in question in a deed of trust to Heard, conveying some other personal property and part of his cotton crop, to Broome, as trustee, to secure Heard for advances.

In the course of the year, Heard probably apprehending that the crop to be raised by Martin would be insufficient to pay the rent and the $140 for the mule and his supply bill, was anxious for Yates to take the mule back and thus relieve the crop to that extent of the charges on it—thereby leaving, in all probability, enough cotton to pay the other claims which Martin had undertaken to pay out of his crop.

It appears that Heard was importunate to get Yates to agree to this arrangement. At first Yates declined, but after a week or two (about the latter part of August), Yates concluded to accept Heard's proposition, which he did and took the mule back, by consent of Martin, whom Heard had requested to induce Yates to take the mule back.

Heard's clerk was told of this by Yates, about a week after the occurrence, as Yates testifies, and Heard himself told of it by Martin, in a week afterwards, as Martin testifies, and Martin says Heard offered no objection to the taking of the mule. Yates then got the mule back about the latter part of August, 1881, and Heard had notice of it about a week after. This was after repeated requests by Heard that Yates should take the mule, and Heard made no objection when he received notice of it. Nor

does it appear that he ever afterwards objected, until in the following January (although Yates had been riding the mule to Utica during the time), when Heard said to Yates that he thought he "could get that mule."

This statement fully expresses the status of the case. It is a circumstance strong to show that Heard had long known how the matter was, and since it had transpired, on account of the *notable drouth* of that year, that Martin's crop was insufficient to do more than pay the rent of the land, Heard had evidently been considering the question as to whether or not he could undo and go behind the arrangement made in the previous summer. He knew that he had a deed of trust, and the idea of an estoppel did not dawn in its full force on his intellect.

After Yates had taken the mule back, he delivered him to the plaintiff below, he agreeing to satisfy J. H. Odeneal, a merchant on the other side of Yates, to whom Yates and a young man, McGuffie (not plaintiff), were jointly indebted, and to whom Yates had given a deed of trust on certain personal property, in which was included the mule in question. It also appears that Yates had left Martin's note for the mule with Odeneal, as collateral security, in addition to the deed of trust to Odeneal.

I insist that the evidence showing Odeneal's relations to the property in question is wholly immaterial and cuts no figure in this cause. Odeneal is not complaining here, and it appears that Yates was doing all he could to get Odeneal paid. It is immaterial where the note of Martin was when Yates took the mule back. Odeneal had a deed of trust on the mule and held the note of Martin too, and doubtless Yates, in his management of the matter, was acting in the interest of Odeneal. This appears from the fact that the mule had been put in C. V. McGuffie's hands, he agreeing to pay Odeneal the debt of Yates and the other McGuffie.

The plaintiff, C. V. McGuffie, was not present at the trial. There was testimony as to what he had told defendant's attorney, but assuming it to be all true, it is evident that here Yates is the real party in interest on the one side, as Heard is on the other, and as I have waived objections of that character, it is but fair to expect equal generosity on the part of the adversary. At all events, it is not material. McGuffie was in possession, holding through Yates, and it makes no difference by what tenure he held, if only as bailable, his claim was good as against Heard or his

trustee. The most that can be said on the facts of the case must still leave the questions as open and the evidence as conflicting, thus leaving it for the jury to decide. And this court will not reverse unless the verdict is *manifestly* wrong, which cannot be predicated of it in this case. Hence I assume that unless there was error in the ruling of the court below on the law, there will be no reversal.

There were but two exceptions taken, besides the motion for a new trial, and this motion was made of Heard, not a party, and I question whether the action of the court on that can be reviewed for that reason. I have not waived the right to object on this point, it being no part of the proceedings for an appeal.     *     *     *

The evidence does not support the assumption of appellant's counsel, that when Yates took the mule back it was known that Martin could not more than pay the rent.

Yates says that when Heard first proposed to him to take the mule back, he thought the crop would pay both. When he did take it back the crop was less promising, but it did not transpire till after that time that the crop would be such a failure.

OPINION.—CAMPBELL, C. J.:

If Heard consented to the release of the mule from the operation of the deed of trust, he could not afterwards claim it. There is no positive evidence of such consent. It is sought to be deduced as an inference from circumstances. It is shown that Heard was desirous for Yates to take the mule back, and had several times urged this on Yates, who had as often refused to do it. In their last interview on the subject in August, Yates had still refused. Afterwards, and when Heard was not present or a party to it, Yates and Martin had a transaction by which the mule was surrendered by Martin to Yates. About a week after this Yates went to Utica to see Heard, but he did not see him and left a message for him with his clerk, but it is not shown to have been communicated to him. Martin sometime after he had surrendered the mule to Yates told Heard of it, who made no reply. From these circumstances the consent of Heard to the surrender of the mule was inferred. We consider them insufficient to establish such consent. The evidence shows only that at one time Heard was willing to release the mule, and that then Yates was not willing to take it on the terms proposed, and that, afterwards, Yates did

take it back, without Heard's consent then expressed; and although a knowledge of this was communicated to Heard by Martin, and Heard made no objection to him, it does not follow that the silence of Heard constituted consent or acquiescence, for he was not bound to speak when informed by Martin. It does not appear that Heard ever said or did anything whereby he was precluded from asserting a claim to the mule.

*Judgment reversed* and new trial granted.